Okay, the next argued case is number fourteen. May it please the court, on the council table we brought in an exemplar of the claim design, which is right here, and we brought an exemplar of the Hardy reference, which is the purported primary reference against the claim design under 103. So, we have two major contentions, and the first contention is that Hardy is not a proper primary reference against the claim design, and the major feature that is absent from the Hardy patent is inclined sidewalls. This is an overall visual appearance that's a critical feature of the claim design, and just as in, for example, the Apple Samsung case, where the Fiddler tablet had a frame around the screen, and the Apple claim design had no frame around the screen, the Fiddler frame was a critical feature, just as the absence of inclined sidewalls here, or the inclined sidewalls here is a critical feature. Now, what effect at all is there with the previous proceeding in which the parent application of the current application was involved? My recollection is that the same question of the primary reference came up. That's correct, Your Honor. Well, in that case, the board held, and we affirmed, right, that the thing you're pointing to was an appropriate prior reference? That is correct, but there was a major distinction in that this design, which is exactly what's claimed in the present application on appeal, in the parent, the lower rim was not claimed, the upper rim was not claimed, and the handle was not claimed, and the significance of that is that the presence in Hardy, the primary reference, of an inner stacking rim was not an issue in the earlier case. The inner stacking rim is important in Hardy, and it's fully disclosed in claim, because it allows the Hardy basket to be stacked one on top of the other. Functional. Oh, I'm sorry. Functional. Well, it's a characteristic feature of Hardy that is totally absent in the claim design, because the mesh basket... But you can't tell that by looking at it? I'm sorry? You can't tell the stacking capacity just by looking at it? Well, you can tell that there is a stacking rim on the bottom, Your Honor, and... Hardy doesn't show it stacked, though, does it? Well, the patent doesn't show it stacked, but there's many other cases that this court has considered functional features of designs that didn't necessarily show. For example, in the Bestlock case, it was about a key blade blank, and that's the only thing disclosed in that patent, but the court considered a mating lock that was not within the four corners of the document. The Ph.D. case, similarly, had a label sheet, and the alternate designs of that label sheet and how the lower, thinner labels could be placed on that label sheet was, in fact, considered by the court, and those are all functional features. So, I think it's entirely appropriate that the stackability of this case, of this primary reference, be considered, and that is exactly the reason that the prior holding is not relevant, really, to this holding, because... That's what I understood, that you were essentially relying on the stacking point to distinguish the previous case. Yes, to distinguish the previous... If we disagree, the stacking issue is in dispute. You and your adversary don't agree on that. That's right. And if we were to agree with them, then the basis for distinguishing the previous case would be significantly less, correct? Yes. Yeah, that's a foreign term. Yes, but there's another reason the stacking feature is important, and that is the effect of the secondary references. Now, the secondary references are ordinary plain baskets. One's a bicycle basket, and the others are three stacked baskets with different proportions, different dimensions, different wire designs, if you will, but they all have inclined sidewalls. Now, what happens when you incline the sidewalls of the primary reference, as suggested by the examiner and the court, is you render it incapable of stacking. If the open mouth is wider than the bottom, these will not stack upon each other. It defeats a major purpose. They stack, but it's in a different way, because they collapse. Well, they nest. They nest. But in a nesting situation, as with the claim design, you lose all the internal storage capacity of the basket, whereas with a stack one on top of the other, you maintain the storage capacity. But again, the storage capacity in question is functional, right? Yes, Your Honor. I mean, it's a purpose of the claim design. I wouldn't say, you know, everything about these baskets is functional. I mean, the sidewalls hold in things, and the frames support the sidewalls, but that is not the issue. Functionality is not an issue in this case, and I would say the use, the purpose, the use of the primary reference, excuse me, is defeated if the sidewalls are inclined. So a great deal turns on the stacking point in the case, both with regard to the secondary references as well as the primary references. Well, I think that is a big point we try to make. But another point is that I think if you look at the rejection that the examiner and the I think it can be more properly characterized as a utility patent type of rejection. They are taking the concept of inclined baskets in the secondary references and suggesting that it would have been obvious to incline the sidewalls of the primary reference. Now, we don't claim to have invented the concept of inclined sidewalls. I mean, they are old, and if this was a utility patent case, I would not be before you. But it is not a utility patent case. It is a question of appearances. And if you look at the court's holding, again, in the Apple-Samsung case, they held that the secondary reference, the TC1000, was not so related, and I put that in quotes because that is the test of Gladys, but it wasn't so related to the primary reference to Fiddler as to make them combinable. And they were both tablets, and they both had flat glass, but there was no visual relationship between the primary and the secondary references so that they could rationally be combined. And that is at Apple-Samsung 678 set third at 1331. And I would... I suppose with visual appearance, it depends on how closely you are looking at the two items, right? Well... I mean, in visual appearance, both, even the one with the angle, they are boxy, they are about the same shape. You mean the two of these?  Yes, but I... The size of the wire is the same. Well, there are a lot of things in common. The wires are the same. They both have upper and lower supports. The handles are obviously the same. Excuse the language. But these walls are inclined. I know it's very tempting to look at the inclined walls of the secondary art and say it's obvious to incline these. But again, that's a... What would happen if the inclination was even slighter than the one you're holding? Well, if the inclination was an inclination... These are perfectly vertical. The side walls are harder. But you can have an inclination that is very, very difficult for the human eye to see, especially like at a distance. This one right here? Yes, but I mean, you could... Is your argument that... Your argument is this particular inclination... The appearance... Is not basically the same as the appearance of the primary wall. Square top, side semicircular openings. But the bottom is a lot smaller than the top. You can fit items into this sort of basket much more easily. It's intended for storage of small items. This one is intended for storage... Why do items fit into it easier? Because it's got a bigger opening at the top. Because the dimension of the top square... But I mean, putting everything in it is a function of how big it is at the top, not how big it is at the bottom. Well... I would think it would be harder to put a great big thing like an anorak in it because the bottom is smaller. Well, when you're choosing a particular size of basket, not that size matters in a design patent, but when you're choosing a particular size, it is more convenient to have the top wider than the bottom because things can be withdrawn from it more easily. This basket was intended to hold file folders, not items. Not saying you can't, but it is just a little more difficult to dig into. I guess I'd like to reserve any time I have left for rebuttal. Okay. Thank you. It's time for rebuttal time, Mr. Seidman. Mr. Russello. Good morning. May it please the Court. In this case, the Board properly determined that the claimed basket design at issue in this appeal was obvious over the prior art, namely the primary reference, another of Hardy's basket designs claimed in the 302 design patent in combination with either of the secondary references, Pope or Glassenberg, that depicts similar baskets with tapered sidewalls. Now, during... The decision as to a primary, whether it's a suitable primary reference, that's a fact question? That's correct. And so substantial evidence is our review standard? That's correct. And in this case, the Board and the examiner set forth several design characteristics. How are we supposed to review that? For example, take the inclined sides of the primary reference and assume that they were even more angular, that the bottom was a square, and say it was only two inches square. So you have really severe inclination. Well, the primary reference doesn't have... Take the case of where you have even less inclination. That's what I'm trying to get at, is what's the standard that we're supposed to use to decide where substantial evidence fits? Substantially more inclined sides than those, with a two-inch square at the bottom. I think everybody would say that's not a sufficient primary reference. If the claimed design had further inclined walls? Right. If the claimed design had further... Perhaps. Perhaps. I mean, that's not the case. What we have is, we have the walls... The exemplar is a good primary reference for what's being claimed. Right? Right. What I'm trying to say is I'm just struggling with how we review for substantial evidence gradations in this particular art of the angles. Well, I think in this case you look to what the board and the examiner said was the overall visual appearance of the primary reference. Right. They have to look virtually the same. They have to look basically the same. So, the test is basically the same and you look to the overall visual impression of it. So, you look to all the different design characteristics and how they work together to create an overall effect. Here, the board and the examiner listed at least five or six different design characteristics including the mesh design, the heavy wire rims, the semicircular openings that are handled by heavy wire rims around those, the heavy wire rims around the bottom as well, and the fact that they're both square, have square openings at the top and are square-shaped baskets. So, let's get to the secondary references because, I mean, you concede that the primary reference wouldn't be enough for a finding of obviousness. Correct? The primary reference... You need a secondary reference. You need secondary references. That's correct. You need something with angles. You need something with angles. That's correct. But the problem is that, for me, is the discussion that both the examiner and the board had was... I mean, cryptic is a nice... is being generous. I mean, they basically said, you would have known. You would have just taken these sidewalls from these other things and put them on here. But that's not really the test. The test is, what about the overall appearance of those other items would motivate you to combine them? And they never really did lay out the proper test, did they? I disagree. I mean, I think that the examiner and the board took the first step of that test which is to determine whether or not the secondary references here, the wire mesh baskets of Pope and Glassenburg, whether or not they are so related to the primary reference. And here, because they're all wire... They just pointed to components that they said, well, there's a component here that has angled sidewalls so therefore, and because it's a basket, you would combine them. But that's not the right test, right? Well, in this case, whether something is so related and they're all wire baskets so they are so related to each other. This court has said, I think, in the MRC Innovations case, when they were talking about the so-related test, they said, you look to see if something is sufficiently related or closely akin to the primary reference. And here, these are all... What's the explanation that either the examiner or the court gave as to why they are so related? The examiner and they all mentioned that they were wire baskets. And so, they are all the type of article that the primary reference is. And so, because they are all wire baskets, they are all so related. They didn't go out and look at lampshades or something like that that would have similar designs to it. They looked within the analogous art. They looked within these wire baskets and found within that art baskets that looked like the claimed design. So, that had the angled sidewalls as the claimed design and said that because they were all wire baskets, they were so related such that the ornamental design and they did make... They were specific to say that it was the ornamental design of the tapered sidewalls would suggest that application to the primary reference here. The square basket. So, your so relatedness is that they just fall into some broad general category of being a basket even regardless of how they appear. I think that you also have to look at the appearance as well. I mean, I think you just can't go out and pull any wire basket. I think that you... In Apple, they were talking about the two tablets and they said they weren't so related. That's correct. So, but I think... That can't be enough. But that was the first step and then the examiner also said that the angled sidewalls look are similar to that of the claimed design as well. What significance do you attach to the previous ruling on the parent application? I think that the previous case with the parent application is, although it's not precedential for this court, I think it's very persuasive. It's the same prior art. It's the same prior design characteristics in common with the primary reference in this case than in the first case, in the parent case. Because in that case, the claims disclaimed the top portion of this. They disclaimed the design characteristics that lend to the overall visual appearance to be basically the same. If you overturn this law that says rule 36 doesn't decide anything, don't we? That's why I say it's not precedential. It's not only not precedential, it doesn't determine anything. It's not even persuasive for us. We're not allowed to consider it. I think because in this case, you have exactly the same prior art. You would end up with a paradoxical case or situation where you have a primary reference that has less design characteristics in common with the claimed design as being non-patentable whereas here you would have a primary reference with even more design characteristics in common namely the handle the wire rim around the top and bottom should be non- patentable. That's both incongruous and paradoxical with the result of the case with the parent. I think again in this case because it's not the issues are pretty much exactly the same they line up almost exactly the same so I think it still should be again persuasive even though What's your take on the stacking issue? The take on the stacking rim in any way affected the visual appearance of the primary reference. So because it doesn't affect the appearance of the primary reference it has no weight in the design patent context. They never made that argument during prosecution the only difference was the tapered sidewall they didn't point to the stacking rim when they were talking about the functionality of it and the functionality of stacking is not relevant in this case the  patent doesn't show stacked patents and the intended use of a product is not something that should be looked at when determining the scope of a design patent you look only to appearances not to the uses you agree with me that in the prior case the decision was a lot more detailed it didn't simply say okay someone would have figured this out which is what the examiner said I think there was more discussion in the prior case than in this case but in this case I see essentially one conclusory statement that says it would have been obvious to a designer of ordinary skill in the art at the time of the invention to modify the design of the record the examiner did say it's the examiner's decision that both Pope and Blasenburg each teach trapezoidal sidewalls and both contain a top opening having dimensions much larger than the bottom much like the applicant's design so the examiner did look to the appearance of the baskets and did in this case say that did find a similarity visually didn't the board adopt the examiner's analysis that's correct the board did adopt the examiner's analysis what's really been confusing about all of this is that a closer primary reference is something like Pope where the shape the general shape is the same except that then when you start drawing the distinctions the wire top the handles you have a diamond shape mesh then you have greater distinctions so what I've been hustling over as I listen to all of this is you pick a primary reference which in fact is a different shape and then you have to combine it with other things in order to get the taper is it error for the board for the examiner no to select a primary reference whose overall appearance according to the law of design patterns is more similar than the primary reference that was selected no I don't think so because I think in this case all of those other design characteristics that the board and the examiner identified the type of mesh the heavy rim the wire mesh on the bottom the handles in isolation they are not applicable no I think it's still basically the same design the examiner and the  had to do things to be visually different enough so that they wouldn't be basically the same this is an obvious analysis there has to be some difference between the primary reference and the claim design and here the difference is the tapered side wall and the examiner went out and found baskets with the same type of taper it's not like the side walls were angled outwardly or were concave or curved they found a design that looked like the angled side walls of the claim design and applied that to the primary reference to get the combination that renders that obvious no I don't believe so I think in this case what they because it can't be hindsight because they did make the determination that the baskets were so related to the primary reference so because of this relation between them the ornamental designs in one basket would be suggested in the primary design itself so because they made that finding no they did not rely on hindsight here overall impression you really are supposed to look at all of the similarities or differences together right and for example I'm sitting here and I'm looking and I say well is that square box a good primary reference along the angle so if you look at the cutouts and if you look at just the square top that sort of the same and is that your essential argument I think is that there are enough other things going on that are the same that tends to overwhelm the factor that may be the same as the claim design I'm trying to get at is I'm just not certain how you do it for example if those scoops the cutouts were both on the primary reference and on the applicant's design were very severe so like two thirds of the side of the basket was cut out that would strike your eye really very quickly and would tend to overwhelm a difference of a slight angular difference on the side I would submit that the heavy wire designs and both of the semi circular openings on either side of the basket with the heavy wire rims the same mesh design between them and the square opening they all combine to create the same visual impression again you may be falling into the trap of the square opening between them but they don't fall  the trap of the square opening between them and the square opening between them and the square opening between them and the square opening between them and the square leaving between them but the square opening between them between them and the square leaving between them  the square opening between them and the square opening between them while the square leaving between them and the square opening but the square leaving between them while the square leaving between them and the square opening between them but the square leaving it has to meet the claim or at least render it obvious. So, I think that those are the points I wanted to make. If you don't have any further questions, thank you very much.